UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-20443-MOORE/D'ANGELO

UNITED STATES OF AMERICA

v.

RYAN CLIFFORD GOLDBERG

**UNITED STATES' OBJECTIONS TO
THE PRESENTENCE INVESTIGATION REPORT**

The United States of America, through the undersigned Assistant United States Attorney and attorneys of the Department of Justice, Criminal Division, Computer Crime and Intellectual Property Section, hereby submits its objections to the Presentence Investigation Report ("PSR") in connection with the sentencing of defendant Ryan Clifford Goldberg [D.E. #72].

**Paragraph 26:**

The government seeks to supplement the factual description of the ransomware attack conducted against Victim 3 with information that was not included in the PSR but which the government has provided and made available to defense counsel pursuant to L. R. Crim. P. 88.10(o)(4).

By way of background, Victim 3 is a doctor's office located in California which is a surgical clinic offering cosmetic surgery and other medical services. In June 2023, Victim 3's servers were encrypted and information from those servers was stolen in furtherance of the Conspiracy in Count 1. Victim 3 received a demand for a ransom to be paid in digital

currency in exchange for the decryption of Victim 3's servers and a commitment not to publish the stolen information. Victim 3 did not pay a ransom.

In addition to the information contained in the PSR and the facts to which Mr. Goldberg has stipulated in connection with his guilty pleas [D.E. #60], Victim 3 has provided the government with information including images of negotiations between Victim 3 and the attacker as well as notes posted by the attackers to the dark web.[1]

The government has provided to counsel for Mr. Goldberg and counsel for Mr. Martin copies of these images that have been redacted to remove the names and identifying information of individual employees of Victim 3, the name of Victim 3, as well as dark web and digital currency addresses. The government has offered to make available to defense counsel unredacted copies of these images for review. Below, the government refers to certain of these redacted images.

Specifically, Victim 3 provided the government with the following images which were described as messages posted by the attackers on approximately June 21, 2023, and

---

[1] The dark web is a common name for The Onion Router, or Tor, network. The Tor network is designed to facilitate anonymous communication over the internet and allows individuals to access the internet with a high degree of anonymity by using "onion routing," which encrypts communications and transfers them through random relay servers to hide the identity of the communications' sender and recipient. To access the Tor network, a user must install Tor software either by downloading an add-on to the user's web browser or by downloading the free Tor browser bundle available at www.torproject.org.

July 28, 2023, respectively to the dark web leak site used by ALPHV BlackCat ransomware:



Figure 1



Figure 2

Additionally, Victim 3 provided the government with the following images described as images of the negotiations between Victim 3 and the attackers. In the following images, Victim 3's representative is identified as "You," and the attackers have been identified as using the moniker "Support." Furthermore, the date notation at the bottom of each image appears to be presented in the format day/month/year with, for example, 05/07/2023 corresponding to July 5, 2023:

> **Support**: You can keep that for yourself. You will need it for the lawsuit's coming your way. Do you even understand how in penalties you will pace in case of this leak? Estimate them around $3 000 000 to $ 4 000 000. Think twice when you come here with this irrelevant offer of yours. Our price is in 7 figures. To be exact you can close this deal around $ 2 000 000 in BTC. Also, we simply don't care where are you going to pull those funds from. You are not just a regular doctors. You deal with plastic surgeries. Sell your assets, take the loan. This is your problem to solve. Your patients already being informed by the phone about this leak. If you don't come around we will start posting them on our blog. Time until Friday.
> 
> 05/07/2023, 13:56
> 
> 25-0443 Sentencing_008

> **You**: We appreciate. I checked with the client and unfortunately, they have to already notify patients and the risk of a legal action is not diminished by publication or not. Hence, the offer of 100K is real until end of the day today at which point we will have to disconnect.
>
> **Support**: You have been warned regarding this. We will leak your data in the next 24 hours.
>
> **Support**: Also, many interesting ponn hub type content will be exposed on our blog, which will destroy your reputation in the matter of days. Enjoy.
>
> **Support**: last chance....
>
> **You**: I told you before 100k is all that is possible. In 3 hours and I am not allowed to come back. I am being honest with you as well.
>
> 08/07/2023, 00:32
>
> 25-0443 Sentencing_001

**Figure 3**

The PSR should reflect the fact that Victim 3 observed the above posts on the ransomware leak site and received the above messages during the ransom negotiations that occurred in connection with the attack conducted against Victim 3.

**Paragraph 41:**

The government objects to the exclusion of Victim-Related Adjustments, which should include one two-level enhancement under U.S.S.G. § 3A1.1(b)(1) because Mr. Goldberg knew or should have known that a victim of the offense was a vulnerable victim.

Paragraph 41 should also include an additional two-level enhancement under U.S.S.G. § 3A1.1(b)(2) because this offense involved a large number of vulnerable victims.

Consistent with paragraph 8(e) of the Plea Agreement between the government and Mr. Goldberg [D.E. #62], the government therefore recommends that Mr. Goldberg receive a total of a four-level victim-related enhancement in Paragraph 47.

**Background**

The commentary to the United States Sentencing Guidelines explains, in pertinent part, that the term "vulnerable victim" as used in § 3A1.1(b) means a person who (1) is a victim of any conduct for which the defendant is accountable under § 1B1.3 and (2) is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct. As it relates to the first element above, for purposes of this victim-related enhancement U.S.S.G. § 1B1.3(a)(1)(A) extends to "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant."

**Application of § 3A1.1(b)(1)**

As a threshold matter, Mr. Goldberg has stipulated in connection with his guilty plea that he, Mr. Martin, and Co-Conspirator 1 used ALPHV BlackCat ransomware to attack Victim 3,

demanded a ransom, and caused damages to Victim 3 that included having sensitive patient photos published on the ransomware variant's leak site. [D.E. #30] Mr. Goldberg's own criminal conduct therefore the direct cause of the harms suffered by Victim 3.

The Court of Appeals for the Eleventh Circuit has held that this enhancement applies were a defendant "knew, or should have known, that a victim of the offense was a vulnerable victim" and that the category of vulnerable victims extends to patients whose need for medical treatment renders them particularly susceptible to the criminal conduct. *United States v. Duran*, 620 Fed.Appx. 687, 691 (11th Cir. 2013)(applying § 3A1.1(b)(1) to a scheme targeting patients who were forced to participate in the defendants' fraudulent scheme on account of the patients' serious illnesses and disorders). The government submits that the information presented above and Mr. Goldberg's own admissions establish that Mr. Goldberg and his co-conspirators attacked Victim 3 for the purpose of exploiting Victim 3's possession of information the defendants knew belonged to victims who were in a vulnerable position due to their surgical care.

In this case, the defendants' awareness that Victim 3 was in possession of patients' medical information, the intimate nature of this information, and the defendants' intent to profit from the compromising nature of this information is demonstrated by defendants' statements during negotiations with Victim 3 and posted to the dark web. As shown in Figure 1, the defendants posted "We have lots of PII and PHI, including a lot of pictures of patients that they would not want out there." In this context, the government assesses that "PII" refers to personally-identifiable information and that "PHI" refers to personal health information. The defendants' access to sensitive information and willingness to post this information is demonstrated by Figure 2, which shows in part a subsequent dark web post by the attackers in

which a medical form is posted as a sample of the stolen information. (In Figure 2, this form has been redacted by the government to protect the name of one surgeon employed by Victim 3 and additional personal information.) Lastly, and perhaps most significantly, as shown in Figure 3 the attackers threatened that "many interesting ponn hub type content will be exposed on our blog …." Based on the attackers separate reference to possessing "a lot of pictures," the government assesses that "ponn hub" is likely a misspelling of "porn hub" and that the attackers were characterizing surgical images stolen from Victim 3 as potentially pornographic to exploit those images and receive a ransom payment.

Under analogous circumstances, the Court of Appeals for the Eleventh Circuit in *United States v. Grossman*, 2023 WL 3918487 (11th Cir. 2023), considered the application of this enhancement in a case where a fraud targeted funds from victims, most of whom were elderly retirees. The court of appeals upheld a plea agreement applying §§ 3A1.1(b)(1) and (b)(2) as procedurally and substantively reasonable where the defendant stipulated as part of his factual proffer to targeting a large number of vulnerable victims. *Id.* at ** 3-4. Similarly, in *United States v. Moran*, 778 F.3d 942, 978-79 (11th Cir. 2015), the court of appeals upheld the application of separate two-level enhancements under both Sec. 3A1.1(b)(1) and (b)(2) where the defendants defrauded Medicare by targeting beneficiaries who were elderly dementia patients and where the record established the defendants knew the patients were being transported to and from assisted living facilities. The court of appeals found these patients were vulnerable, as that term is used in the sentencing guidelines, because of their need for substance abuse treatment.

Nor is the government seeking to apply this enhancement post-hoc based only on an assessment of the type of information that was stolen. *Cf. United States v. Hudson*, 822

Fed.Appx. 888 (11th Cir. 2020) (finding that the district court erred in applying a vulnerable victim enhancement where the record established only that a numerical majority of fraud victims were elderly). In this case, the defendants' contemporaneous statements establish they knew and intended to profit from the medical conditions of Victim 3's patients.

Finally, to the extent that Mr. Goldberg may argue that these Victim-Related Adjustments do not apply because Victim 3 – rather than individual patients whose images and information were stolen -- suffered the consequences of the co-conspirators' criminal conduct, this interpretation of § 3A1.1(b) has been rejected by the Court of Appeals for the Eleventh Circuit. In *Duran*, the court of appeals considered the application of both of § 3A1.1(b)(1) and (2) where the defendants' criminal activity defrauded the Medicare health program and this enhancement was based on the effect of this fraud on individual patients of the assisted living facilities and halfway houses which were parties to the fraudulent scheme. The court of appeals rejected the argument that this enhancement could not apply because the government, rather than these patients, was the relevant victim of the crime. In doing so, the court of appeals held that "[t]he damage to these *patients* – collateral or otherwise – was real." 620 Fed.Appx. at 692 (emphasis added) (citing *United States v. Bradley*, 644 F.3d 1213, 1288 n. 128 (11th Cir. 2011)). The holding of *Duran* applies squarely to the criminal conduct by Mr. Goldberg, Mr. Martin, and Co-Conspirator 1 in targeting Victim 3 in order to take advantage of the intimate and medical information held by this victim regarding its patients.

### Application of § 3A1.1(b)(2)

The government further seeks a two-point enhancement based on the number of vulnerable victims that were targeted by Mr. Goldberg and his co-conspirators, which is supported by the defendants' own statements dealing with Victim 3. As illustrated by Figure 3,

the defendants referred to notifying "patients," plural, regarding this leak in addition to their threats posted to the dark web as to sharing only a "sample of what [is] to come" and having "lots" of personally identifiable information, health information, and pictures of patients. While the sentencing guidelines do not provide a minimum number of victims that must be identified to trigger the application of § 3A1.1(b)(2), the court of appeals has found the application of this additional enhancement appropriate where the criminal activity targeted approximately 26 victims. *Grossman*, 2023 WL 3918487 at **3-4. The court of appeals has also found the application of this enhancement appropriate where the district court could reasonably infer from the record of the case that a defendant had targeted a "large" but not further specified number of people. *United States v. Baptiste*, 935 F.3d 1304, 1318 (11th Cir. 2019).

The record establishes that the defendants intended to profit from both the vulnerable nature of Victim 3's patients as well as the volume of stolen information, warranting the application of both § 3A1.1(b)(1) and (b)(2) for a total four-level victim-related enhancement.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

/s/ *Jorge Gonzalez*
Jorge Gonzalez
Trial Attorney
Computer Crime and
Intellectual Property Section
1301 New York Avenue, N.W.
Washington, D.C.  20530
(305) 616-2272
jorge.gonzalez3@usdoj.gov

Thomas Haggerty
Assistant United States Attorney
Court No. A5500795
99 Northeast 4th Street

        Miami, Florida 33132-2111
        (305) 961-9002
        thomas.haggerty@usdoj.gov

        Christen Gallagher
        Trial Attorney
        Computer Crime and
        Intellectual Property Section
        1301 New York Avenue NW
        Washington, DC 20530
        (202) 616-5630
        Christen.Gallagher@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on February 19, 2026, I electronically filed the foregoing Objections to the PSR with the Clerk of the Court using CM/ECF.

                                /s/ *Jorge Gonzalez*