UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-CR-20443-MOORE

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RYAN CLIFFORD GOLDBERG,

    Defendant.

_____/

### RYAN GOLDBERG'S RESPONSE TO THE GOVERNMENT'S PSI OBJECTIONS

Ryan Goldberg, through undersigned counsel, files this Response to the Government's Objections to the Pre-Sentence Investigation Report (DE 75). For the below reasons, the PSI correctly declined to apply a vulnerable victim enhancement pursuant to U.S.S.G. § 3A1.1(b) in the Pre-Sentence Report. The Court should overrule the Government's objections.

I.    <u>Victim 3 does not qualify as a "vulnerable victim."</u>

United States Sentencing Guideline § 3A1.1(b) provides for a two-level enhancement when "the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). A "vulnerable victim" is a victim of the relevant conduct "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." *Id.*, application note 2. The commentary provides the following examples:

> Subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the

> victim's unusual vulnerability. The adjustment would apply, for example, in a fraud case in which the defendant marketed an ineffective cancer cure or in a robbery in which the defendant selected a handicapped victim. But it would not apply in a case in which the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. Similarly, for example, a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank.

*Id.*, application note 2. The Government bears the burden of proving that the vulnerable victim enhancement applies. *See, e..g., United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999).

The vulnerable victim enhancement "focuses chiefly on the conduct of the defendant," and should apply when a defendant targets the victims to take advantage of the victims' perceived susceptibility to the offense, or when the defendant knew or should have known the victims were vulnerable." *See United States v. Frank*, 247 F.3d 1257, 1259–60(11th Cir. 2001); *United States v. Birge*, 830 F.3d 1229, 1233–34 (11th Cir. 2016). "The increase applies when a defendant selected his victim to take advantage of that victim's perceived susceptibility to the offense." *United States v. Moran*, 778 F.3d 942, 978 (11th Cir. 2015).

Critically, a victim's membership in a certain class does not, by itself, establish that a victim was vulnerable, even if the victim is a member of a class that is the typical victim for a certain offense. *United States v. Hudson*, 822 F. App'x 888, 890 (11th Cir. 2020) (citing *Frank*, 247 F.3d at 1259–60). For example, the Eleventh Circuit has explained that bank tellers, as a class, are not per se vulnerable victims within the meaning of § 3A1.1, though they are the typical victims of bank robberies. *United States v. Phillips*, 287 F.3d 1053, 1057 (11th Cir. 2002). The Eleventh Circuit

has also found clear error when a sentencing court applied the vulnerable victim enhancement based on the victims' age alone, although elderly victims are the most typical victims of identity theft. *See Hudson*, 822 F. App'x at 891 (finding government would have needed to present additional evidence of victim's vulnerability outside of the victims' ages to show the victims' unique vulnerability).

Here, the record contains no information for this Court to find that the patients of the plastic surgery clinic had unique characteristics that made them more vulnerable to this offense beyond their membership in a class. The Government has provided virtually *no* information about the characteristics of the patient victims. The PSI includes no facts about the patients, the information obtained or leaked, the nature of the alleged "surgical services" received by the patients, or why these services somehow rendered them particularly vulnerable to this offense. Given that Victim 3 advertises itself as a plastic surgery clinic dedicated to beauty results, the Court cannot assume that the patients were seeking treatment out of unique medical *vulnerabilities*. Nor is the patients' membership in a class—plastic surgery patients—sufficient by itself to support the enhancement, even assuming this class qualifies as unusually vulnerable (which it does not).

To the extent the Government argues that Victim 3 is uniquely vulnerable merely because it possessed PII and medical information—this can hardly be described as "uniquely vulnerable." Nearly every victim of a cyber-attack is in possession of PII and other sensitive data—this is precisely why victims of cyberattacks are targeted for extortion in the first place. Just as a bank teller is not

per se vulnerable because she is the typical target of a bank robbery, so too a victim in possession of PII is not per se vulnerable, although she is the typical target of a cyberattack. To find Victim 3 vulnerable merely because it was in possession of PII would run afoul of this Circuit's case law instructing that membership in a class alone is insufficient to support application of the vulnerable victim enhancement. *See Frank*, 247 F.3d at 1259–60; *Hudson*, 822 F. App'x at 890.

The Government argues that Mr. Goldberg and his co-conspirators "attacked Victim 3 for the purpose of exploiting Victim 3's possession of information the defendants knew belonged to victims who were in a vulnerable position due to their surgical care." Gov't Obj. at 6. As evidence of this intent, the Government largely relies upon statements made by "Support" in a ransomware chat with Victim 3, displayed as Government Figures 1–3 at DE 75, referred to hereafter as the "Support Chat."

The Government's attempt to rely upon the Support Chat to apply this enhancement to Mr. Goldberg raises a few issues. First, the Government has offered no evidence of which co-conspirator made, adopted, or even knew about these statements. This is important because it is well-established that a sentencing judge "must make individualized findings" about relevant conduct and that "the relevant conduct for each coconspirator [] s not necessarily the same." *United States v. Barry*, 163 F. 4th 1346, 1350 (11th Cir. 2026). This is particularly so for the vulnerable victim enhancement, which "focuses chiefly on the conduct of the defendant." *Frank*, 247 F.3d 1257 at 1259–60. Nothing in the Support Chat identifies Mr. Goldberg as the

4

"Support" or otherwise indicates that he was aware of or adopted the statements made by a co-conspirator to Victim 3. Mr. Goldberg agrees that he conspired with his two co-defendants to use Blackcat to demand a ransom and cause Victim 3 to fear financial loss and therefore pay the ransom. DE 60 (Factual Proffer). In other words, there is no dispute that Mr. Goldberg is *criminally liable* for the attack on Victim 3. But nothing in this admission leads to the conclusion that Mr. Goldberg intentionally targeted Victim 3 because Mr. Goldberg perceived some unique and specific vulnerability of Victim 3, as § 3A1.1(b) requires.

To the contrary, the unobjected to facts contained in the PSI show that Mr. Goldberg had no role in selecting the business victims or communicating with them during the ransom attacks. According to the PSI, Mr. Goldberg used his skillset to identify network weaknesses and procure access to victims' networks. PSI ¶ 33. He also ran anti-forensic tools in the network so that he and his co-conspirators would not be detected. PSI ¶33. By contrast, co-defendant Martin identified victims, and Co-Conspirator 1 handled the identification of and negotiation with victims. PSI ¶ 33. To the extent the Support Chat can be relied upon at all, the evidence indicates the statements were made by the co-conspirators. No evidence points to Mr. Goldberg having any communication with the victims or any knowledge of the Support Chat. For these reasons, the Court should not consider the Support Chat as evidence to support the vulnerable victim enhancement against Mr. Goldberg.

But even if the Court considers the Support Chat, it does not assist the Government's position that the defendants targeted the plastic surgery clinic because

5

of "perceived vulnerabilities due to their surgical care." Rather, the full Support Chat indicates that the defendants targeted the plastic surgery clinic because the defendants believed the clinic to be *wealthy* and able to meet the desired seven figure demand. For example, the full Support Chat[1] reveals the following statements: "we know dr [] has approval for loan for over 1kk with chase bank" (Support Chat at 4) and "You are not just regular doctors. You deal with plastic surgeries. Sell your assets, take the loan" (Support Chat at 8). Victim 3 also asks Support how it came up with its demand number, and Support states, "How? We have been in your network for several month[s]. We know about every penny you have got your bank accounts." (Support Chat at 13). These statements indicate that the defendants targeted Victim 3 because of their perception about Victim 3's wealth, not because of a perceived "vulnerability due to their surgical care."

The Government's citations do not help its position. First, the Government cites to the unpublished *United States v. Grossman*, 2023 WL 3918487 (11th Cir. 2023) and claims that the Eleventh Circuit upheld the enhancement "[u]nder analogous circumstances." This claim is inaccurate, to say the least. The *Grossman* defendant *agreed* in his plea agreement that the vulnerable victim enhancement applied and failed to lodge any oral or written objection to the enhancement at sentencing, unlike Mr. Goldberg does here. *Id*. at *3. Unsurprisingly, under plain error review, the Eleventh Circuit found that the defendant "invited any error

---

[1] Mr. Goldberg separately attaches the full redacted text of the Support Chat here, as produced by the Government.

6

concerning the adjustment." *Id.* at *4. Far from upholding the enhancement "under analogous circumstances" as the Government claims, the *Grossman* Court did not even reach the merits of the enhancement's application.

The Government's citation to the unpublished *United States v. Duran*, 620 F. App'x 687 (11th Cir. 2013) also does not aid its position. In *Duran*, the defendants were convicted of participating in a Medicare fraud scheme involving paid kickbacks to assisted living facilities or halfway houses so that these entities would require patients to participate in partial hospitalization programs. *Id.* at 689. The patients were selected based on patients' conditions, though the patients did not receive proper treatment or medical attention. *Id.* At sentencing, the district court applied § 3A1.1's vulnerable victim enhancement based on evidence that the defendants targeted patients because of their conditions. *Id.* But unlike the record here, the sentencing record in *Duran* included robust factual findings about the unique vulnerabilities of the patients, including that "many of these patients had limited cognitive ability and were unable to feed themselves, defecated on themselves, or were unresponsive to group therapy." *Id.* at 691. Because the record supported that the defendants targeted the patients because of these articulable vulnerabilities, the Eleventh Circuit upheld the application of the enhancement. *Id.*

The Government developed a similarly detailed factual record in *United States v. Moran,* 778 F.3d 942 (11th Cir. 2015). In *Moran*, the defendants created a kickback scheme involving false Medicaid billing for partial hospitalization programs at a mental illness health center. *Id.* at 950–51. The sentencing evidence demonstrated

that the victims of the scheme were largely elderly patients with dementia and substance abusers suffering from frequent relapses. *Id.* at 978–79. As a result of the defendants' scheme, these patients did not receive treatment, and the evidence showed that the defendants "knew about the patients and the lack of meaningful treatment" and "targeted Medicare beneficiaries in order to further the fraudulent activity." *Id.* Based on this specific information about the victims' unique vulnerabilities, the Eleventh Circuit upheld the application of the enhancement.

No such specific facts exist here. The PSI contains no information about the patients, their conditions, or what qualities make them uniquely vulnerable. Whereas the factual record in *Moran* and *Duran* presented robust facts regarding specific physical or mental conditions, including obviously vulnerable conditions such as dementia or substance abuse relapse, nothing similar exists here.

Because the Government's request for the vulnerable victim enhancement finds no support in the factual record, nor this Circuit's case law, the Court should overrule the Government's objection and decline to apply the vulnerable victim enhancement.

II. <u>Even if Victim 3 qualifies as a vulnerable victim, the Government cannot meet its burden to show that the offense involved a large number of vulnerable victims.</u>

The Government also seeks an additional adjustment under U.S.S.G. § 3A1.1(b)(2) which provides for a two-level enhancement when "the offense involved a large number of vulnerable victims." Gov't Obj. at 8–9. In support of this request,

the Government points only to the use of plural words in the Support Chat, such as the plural "patients" and "lots." Gov't Obj. at 8–9. The Government has not offered any kind of estimate for the number of victims.

As an initial matter, the mere use of a plural word, with nothing more, is not sufficient to meet the Government's burden. "Patients" could refer to as little as two people, and a reference to "lots" of PII could merely reference a large amount of PII for a single patient. The Government does appear to have tried to estimate the number of victims. It has provided no information about the size of the plastic surgery clinic, the number of patients, the number of patients whose data was compromised, or any other information such that the Court could find, by the preponderance of the evidence, a "large number" of victims. The mere use of plural descriptors, with nothing more, is not sufficient for the Government to meet its burden for the enhancement's application.

The Government cites to *United States v. Baptiste*, 935 F.3d 1304 (11th Cir. 2019) to support the district court's authority to make reasonable inferences as to the number of victims. True, the sentencing court may make reasonable inferences in applying this enhancement, but those inferences must be inferred from the *sentencing evidence*. In *Baptiste*, the defendant participated in an § 11 million scheme involving cashing tax-refund checks, and the district court reasonably inferred "from the evidence detailing *the number of checks* that Baptiste cashed that he had targeted a "large number" of people." 935 F.3d at 1318 (emphasis added). Unlike the record in

9

*Baptiste*, the record here contains no specific information for the Court to rely upon in making a reasonable inference that the offense involved a large number of victims.[2]

For these reasons, even if the Court finds that Mr. Goldberg targeted a vulnerable victim, it should decline to apply the additional two-level enhancement for targeting a large number of vulnerable victims. The PSI correctly declined to apply the enhancement, and the Court should overrule the Government's objections.

Respectfully Submitted,

HECTOR A. DOPICO
FEDERAL PUBLIC DEFENDER

By:   /s/ *MaeAnn Dunker*
      MaeAnn Dunker
      Assistant Federal Public Defender
      Special A#: A5502960
      150 W. Flagler Street, Suite 1700
      Miami, Florida 33130-1556
      Tel: (305) 530-7000
      Email: MaeAnn_Dunker@fd.org

---

[2] The Government's only other citation is to *United States v. Grossman*, 2023 WL 3918487 (11th Cir. 2023), where the Eleventh Circuit, as noted above, found that the defendant invited error by agreeing to the vulnerable victim enhancement his plea agreement and did not reach the merits of the enhancement's application.

10

**CERTIFICATE OF SERVICE**

I HEREBY certify that on **February 26, 2026,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/ MaeAnn Dunker*
      MaeAnn Dunker