UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-20443-CR-MOORE

UNITED STATES OF AMERICA

v.

RYAN CLIFFORD GOLDBERG and
KEVIN TYLER MARTIN,

        **Defendants.**

                                /

## THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

The United States of America hereby files its sentencing memorandum as to Ryan Clifford Goldberg ("GOLDBERG") and Kevin Tyler Martin ("MARTIN). GOLDBERG and MARTIN, were cyber-incident response professionals employed to mitigate ransomware attacks. Instead, they exploited their special skills to attack and extort U.S. companies for their gain. Their conduct corrodes the trust in the cyber-incident response industry, and the Court should impose a sentence that reflects the seriousness of the offense, including the conspirators' actions to specifically target vulnerable victims with their criminal conduct, and the need to both promote the rule of law and deter future cyberattacks including attacks by the very professionals trained to prevent the attacks. The Court should impose a sentence within the guidelines.

### I.    BACKGROUND ON RANSOMWARE AND THE BLACKCAT/ALPHV VARIANT

Ransomware is malicious software that encrypts and steals data from vulnerable computer networks to extort a ransom payment in exchange for unlocking the network and/or not publishing sensitive stolen data. BlackCat/ALPHV ("BlackCat") is a variant of ransomware that was used to attack institutions around the world, including entities engaged in interstate commerce in the Southern District of Florida.

1

The BlackCat ransomware variant was developed and managed by BlackCat administrators, or "admins," who granted BlackCat "affiliates" access to the application programming interface, or panel, used to deploy the ransomware pursuant to an agreement that any ransoms paid in virtual currency would be split.  Typically these ransom payments were divided with 20% going to the admins and 80% going to the affiliate. Each BlackCat affiliate typically had their own unique login to the BlackCat panel through which they managed their attacks. After an affiliate deployed BlackCat ransomware on a victim's system and encrypted and/or stole the victim's data, the victim was directed by the ransom note left on the victim's system with instructions to access a communications platform to negotiate a ransom payment for the encrypted and stolen data. BlackCat actors threatened victims through messages stating that sensitive data on a victim's network was downloaded, that quick action was needed to prevent the publication of sensitive data, and that attempts by the victim to modify encrypted data will result in permanently lost or inaccessible data.

Typically, the victim was given an initial ransom demand and an opportunity to negotiate a ransom payment amount, sometimes reaching an agreement to pay an amount less than the initial demand.  If the victim paid the ransom, they were provided with a "decryptor," a decryption key to render their encrypted data readable and usable to the victim. In cases where sensitive victim information was stolen, the ransom payment was also paid in exchange for a promise by the BlackCat actors to not publish stolen victim data on a publicly-viewable data leak site. If a victim did not pay the ransom, their stolen data would be published on the data leak site.

## II.      THE GOLDBERG, MARTIN, AND MARTINO CONSPIRACY

The defendants and co-conspirator Angelo MARTINO wore two hats: one as trusted incident response professionals employed to help victim organizations respond to and mitigate

ransomware attacks, and another as the perpetrators of the very attacks their profession exists to mitigate. Ryan Clifford GOLDBERG, Kevin Tyler MARTIN, and MARTINO attacked at least five victims using BlackCat ransomware as established by the facts to which each defendant stipulated in the course of pleading guilty to the indictments in these cases. One victim, a medical device company, paid GOLDBERG, MARTIN, and MARTINO over $1,200,000 in virtual currency at the time of payment. GOLDBERG, MARTIN, and MARTINO split the ransom payment equally. When the remaining victims who received significant ransom demands ranging from hundreds of thousands to millions of dollars did not pay the ransom, they did not receive "decryptors" to unlock their data. Sensitive information stolen from the victims was also published on the BlackCat leak site. Every victim suffered damages from the attacks by GOLDBERG, MARTIN, and MARTINO.

### III.    CRIMINAL PROSECUTION

On June 25, 2025, Ryan Clifford GOLDBERG and his wife fled the United States to Europe after the Federal Bureau of Investigation served GOLDBERG a target letter (DE: 3). Eventually, GOLDBERG flew to Mexico from a foreign destination and was deported back to the United States where he was arrested by complaint (DE: 3). After a hearing, Magistrate Judge Marty Fulgueira Elfenbein ordered GOLDBERG detained for the remainder of his proceedings.

On October 2, 2025, a grand jury returned an Indictment against GOLDBERG and Kevin Tyler MARTIN. Count 1 of the Indictment charged the defendants with conspiring with each other and Angelo MARTINO (Co-Conspirator 1) to interfere with interstate commerce by extortion. Count 2 charged them with interference with interstate commerce by extortion for extorting the medical device company, and Count 3 charged them with encrypting the medical device company's servers. MARTIN surrendered on October 14, 2025 (DE: 31). MARTIN and

3

GOLDBERG pled guilty to Count 1 of the Indictment, and the Court accepted their guilty pleas on December 29, 2025 (DEs: 68, 69). They are set for sentencing on April 30, 2026 (DE: 85).

On February 25, 2026, Angelo MARTINO was charged by Information with conspiracy to interfere with interstate commerce by extortion in 26-CR-20065. MARTINO pled guilty, and the Court accepted his guilty plea on April 20, 2026 (26-CR-20065, DE:30). In addition to conspiring with Ryan Clifford GOLDBERG and Kevin Tyler MARTIN, MARTINO, while employed as a ransomware negotiator, provided confidential information to BlackCat actors during ransomware negotiations in order to maximize the ransom paid by victims (26-CR-20065, DE:26). He is set for sentencing on July 9, 2026 (26-CR-20065, DE:30).

### IV.   THE DEFENDANTS' GUIDELINES RANGE

The United States submits that the defendants' Total Offense Level is 29.

In addition to the offense characteristics to which the parties stipulated in the course of the defendants' guilty pleas, GOLDBERG and MARTIN are also deserving of a total four-level enhancement  as a result of targeting a large number of vulnerable victims enhancement under § 3A1.1(b)(2) for all the reasons addressed in the government's Objections to the PSR (DEs: 75, 76).  As a result of the application of this enhancement, the defendants are thereby not entitled to a two-point reduction under § 4C1.1

As defined in the Guidelines Application Notes, a vulnerable victim is "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is … otherwise particularly susceptible to the criminal conduct." Subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. As one example, Application Note 2 includes an example of "a fraud case in which the defendant marketed

4

an ineffective cancer cure." Here, one aspect of the criminal conduct was extortion of the victim by threatening to publicly disclose stolen sensitive data. The defendants targeted Victim 3 because it was a cosmetic surgery practice and would have sensitive patient information, including sensitive photographs that would make Victim 3 more susceptible to extortion threats regarding the leak of this data. In negotiations with Victim 3, the negotiator specifically referenced "interesting ponn (sic) hub type content" that would be disclosed on the leak site if the victim did not pay. The reference to "ponn hub" is likely referring to Porn Hub because the stolen data included intimate photos of patients pre and post operation and indicate that the conspirators had reviewed the data they had stolen, knew it contained especially sensitive information, and sought to leverage that in extorting the victim. Indeed, Victim 3 reported to the FBI that thousands of patient records including operative notes, pre- and post-operation images, and client information were exfiltrated from their systems during the attack and the practice confirmed that at least some images were in fact posted to the BlackCat leak site. A file tree provided by the threat actors to Victim 3 as part of negotiations confirmed that the stolen data did include patient information and photos related to treatment.

Victim 3 was targeted because the nature of its practice and the data it held and the harm disclosing intimate patient photos and other personal data would cause not only to Victim 3's business but also to the effected patients makes it especially vulnerable to extortion.

The correct application of the Guidelines is as follows:

| Guideline Section | Level |
|---|---|
| **Base Offense Level** § 2B3.2 | **18** |
| | |
| **Specific Offense Characteristics** | |
| Amount demanded more than $9,500,000: § 2B3.1(b)(7)(H) | **+7** |
| Abuse of public or private trust or used a special skill: § 3B1.3 | **+3** |
| Vulnerable Victim (Large Number): U.S.S.G. § 3A1.1(b)(2) | **+4** |
| **Adjusted Offense Level** | **32** |
| Acceptance of Responsibility § 3E1.1 | -3 |
| | |
| **Adjusted Offense Level** | **29** |
| | |

With a criminal history category of I, the Defendants' guideline range is 87-108 months

## V.    THE SECTION 3553(A) FACTORS

While the Guidelines are purely advisory, the Court "must consult those Guidelines" and the factors set forth in 18 U.S.C. § 3553(a) when determining the appropriate sentence. *United States v. Booker*, 543 U.S. 220, 264 (2005).

The sentencing factors set forth in 18 U.S.C. § 3553(a), particularly the nature and circumstances of the offense and history of the defendant, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment and adequate deterrence, counsel in favor of a substantial sentence.

The Eleventh Circuit has held that white-collar criminals deserve punishments commensurate with the seriousness of their offenses:

> Because economic and fraud-based crimes are "more rational, cool, and calculated than sudden crimes of passion or opportunity," these crimes are "prime candidate[s] for general deterrence." … Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment.

***

6

Indeed, the Congress that adopted the § 3553 sentencing factors emphasized the critical deterrent value of imprisoning serious white collar criminals, even where those criminals might themselves be unlikely to commit another offense. . . .

*United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (certain internal citations omitted).

The Eleventh Circuit also cautioned against sentences that leave the impression that "would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty." *Id.*

Ryan Clifford GOLDBERG and Kevin Tyler MARTIN were incident response professionals-members of a small community of specialists whom victims, employers, and the broader public trust to stand between them and precisely the kind of attacks they chose to commit. Their harm extends well beyond the companies listed in the Indictment. Ransomware response depends on victims being willing to retain experts when they are at most vulnerable moments. GOLDBERG and MARTIN's conduct erodes that willingness. Their sentences should reflect their abuse of their positions and specialized skill, the large ransoms that they sought from their victims, and the large number of vulnerable victims.

## VI.    CONCLUSION

At the Defendant's sentencing, the Court should impose a Guidelines sentence.

<table>
<tr><td></td><td>JASON A. REDING QUINOÑES<br>UNITED STATES ATTORNEY</td></tr>
<tr><td>BY:  __/s/ Jorge Gonzalez__<br>Jorge Gonzalez<br>Christen Gallagher<br>Trial Attorneys<br>1301 New York Avenue, NW<br>Washington, D.C. 20005<br>Email: Jorge.Gonzalez@usdoj.gov<br>Email: Christen.Gallagher@usdoj.gov</td><td>BY:  __/s/ Thomas Haggerty__<br>Thomas Haggerty<br>Assistant United States Attorney<br>Fla. Bar. No. 46136<br>99 N.E. 4th Street<br>Miami, Florida 33132<br>Email: Thomas.Haggerty@usdoj.gov</td></tr>
</table>

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 23, 2026, the undersigned electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.


/s/Thomas Haggerty
Thomas Haggerty
Assistant United States Attorney