**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CR-20443-MOORE**

UNITED STATES OF AMERICA

v.

RYAN CLIFFORD GOLDBERG,

      Defendant.

## PRELIMINARY ORDER OF FORFEITURE

THIS MATTER is before the Court upon motion of the United States for entry of a Preliminary Order of Forfeiture ("Motion") against Defendant **RYAN CLIFFORD GOLDBERG** (the "Defendant").  The Court has considered the Motion, is otherwise advised in the premises, and finds as follows:

On or about October 2, 2025, a federal grand jury returned an Indictment charging the Defendant in Count 1 with conspiracy to interfere with interstate commerce by extortion in violation of 18 U.S.C. § 1951(a), in Count 2 with interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951(a), and in Count 3 with intentional damage to a protected computer in violation of 18 U.S.C. § 1030(a)(5)(A). *See* Indictment, Dkt. No. 17. The Indictment also contained forfeiture allegations, which alleged that upon conviction of a violation of 18 U.S.C. § 1951(a), the Defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the violation to such offense, pursuant to 18 U.S.C § 981(a)(1)(C). *See id.* at 7–8.

On December 18, 2025, the Court accepted the Defendant's guilty plea to Count 1 of the Indictment. *See* Minute Entry, Dkt. No. 58; Plea Agreement ¶ 1, Dkt. No. 59. On December 29,

2025, the Court adopted U.S. Magistrate Judge Ellen F. D'Angelo's Report and Recommendation and accepted the Defendant's guilty plea to Count 1 of the Indictment. *See* Paperless Order, Dkt. No. 68; Report and Recommendation, Dkt. No. 64. As part of the guilty plea, the Defendant agreed to a forfeiture money judgment in the amount of $324,123.26. *See* Plea Agreement ¶ 15.

In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Factual Proffer, Dkt. No. 60; *see generally* Paperless Order, Dkt. No. 68; Report and Recommendation, Dkt. No. 64. The Factual Proffer also provided a basis for the forfeiture of property. *See id.* at 3–4.

As set forth in the Defendant's Factual Proffer, beginning in or around 2022, the Defendant, Co-Conspirator 1 and Co-Defendant Kevin Martin ("Co-Defendant"), began using ransomware to conduct ransomware attacks against victims. *See* Factual Proffer 2. During the times relevant to this conspiracy, the Defendant was the director of incident response for a multinational cybersecurity company specializing in computer forensics and resided in Georgia. *See id.* Co-Conspirator 1 was a ransomware negotiator at Company 1 (an incident response company) and resided in Florida. *See id.* The Co-Defendant was also a ransomware negotiator at Company 1 and resided in Texas. *See id.* In or around May of 2023, Co-Conspirator 1 obtained affiliate access to the BlackCat panel which was shared with the Defendant and Co-Defendant. *See id.* After Co-Conspirator 1 obtained affiliate access, the Defendant, Co-Conspirator 1, and Co-Defendant agreed to and did use the BlackCat ransomware and platform to attack and extort victims and share the ransom proceeds amongst themselves and with the BlackCat admin. *Id.* at 2–3.

The three subjects communicated about using, and did leverage, their professional skillsets and familiarity with ransomware threat actors in attacking victims. *See* Factual Proffer 3. Namely, the Defendant, who had professional experience scanning and identifying vulnerabilities, procured

access to victim networks. *See id*. The Defendant also ran anti-forensic tools in victim networks to conceal the actors' malicious presence. *See id*.

In or around May 2023, the Defendant, Co-Conspirator 1, and the Co-Defendant used BlackCat ransomware to attack Victim 1, a medical device company engaged in interstate commerce. *See id*. Victim 1's servers were encrypted and the defendant, Co-Conspirator 1, Co-Defendant in demanded a $10 million dollar ransom payment to decrypt their servers. *See id*. The attack caused Victim 1 to fear financial loss from the theft and encryption of their data. *See id*. Victim 1 paid the Defendant, Co-Conspirator 1 and Co-Defendant a ransom payment of approximately 44.811 bitcoin worth approximately $1,200,000 at the time of payment, for the decryptor and for their data not to be published on the Internet. *See* Factual Proffer 3. Consistent with the agreement with the BlackCat administrator to receive affiliate access to the BlackCat panel, the Defendant, Co-Conspirator 1, and Co-Defendant paid the BlackCat administrator a percentage of the ransom. *Id.* at 3–4.

Per the agreement with BlackCat's administrator, Victim 1's ransom payment of approximately 44.811 bitcoin was split; the BlackCat administrator received approximately twenty percent (20%) of the ransom payment, and the co-conspirators received approximately eighty percent (80%) of the ransom payment. *See id*. at 4. Thus, the co-conspirators received approximately 36.729 bitcoin from Victim 1's ransom payment, which they all agreed to split equally amongst themselves. *See id*. This amounted to each co-conspirator receiving approximately 12.243 bitcoin, which at the time was valued at approximately $324,123.26. *See id*. The Defendant and Co-Defendant chose to launder their share of Victim 1's ransom payment using a cryptocurrency mixing service provided by ALPHV BlackCat before transferring their share to cryptocurrency wallets they controlled. *See id*.

In or around May 2023, the Defendant, Co-conspirator 1, and Co-Defendant used BlackCat ransomware to attack Victim 2, a pharmaceutical company engaged in interstate commerce. *See* Factual Proffer 4. The Defendant, Co-conspirator 1, and the Co-Defendant demanded a ransom payment to decrypt their servers with the intent to cause Victim 2 to fear financial loss from the theft and encryption of their data and therefore pay the ransom. *See id*. Victim 2 did not pay ransom and thus was not provided with a decryptor which resulted in Victim 2 sustaining damages. *See id*.

In or around June 2023, the Defendant. Co-Conspirator l, and Co-Defendant used BlackCat to attack Victim 3, a doctor's office engaged in interstate commerce. *See id*. at 5. The Defendant, Co-conspirator 1, and the Co-Defendant demanded a $5,000,000 ransom payment to decrypt Victim 3's servers. *See id*. The Defendant, Co-Conspirator 1, and the Co-Defendant intended to cause Victim 3 to fear financial loss from the theft and encryption of their data and therefore pay the ransom. *See id*. Victim 3 did not pay the ransom and was not provide a decryptor. *See* Factual Proffer 5. Victim 3 suffered damages, including having sensitive patient photos published on the leak site. *See id*.

In or around October 2023, the Defendant, Co-conspirator 1, and the Co-Defendant used BlackCat ransomware to attack Victim 4, an engineering company engaged in interstate commerce. *See id*. The Defendant, Co-conspirator 1, and the Co-Defendant demanded a $1,000,000 ransom payment to decrypt their servers. *See id*. The Defendant, Co-Conspirator l, and the Co-Defendant intended to cause Victim 4 to fear financial loss from the theft and encryption of their data and therefore pay the ransom. *See id*. Victim 4 did not pay ransom and thus was not provided with a decryptor which resulted in Victim 4 sustaining damages. *See id*.

In or around November 2023, the Defendant, Co-conspirator 1, and the Co-Defendant used BlackCat ransomware to attack Victim 5, a manufacturer of unmanned aerial systems engaged in interstate commerce. *See* Factual Proffer 5. The Defendant, Co-conspirator 1, and the Co-Defendant demanded a $300,000 ransom payment to decrypt their servers. *See id*. The Defendant, Co-Conspirator 1, and the Co-Defendant intended to cause Victim 5 to fear financial loss from the theft and encryption of their data and, therefore, to pay the ransom. *See id*. at 5–6. Victim 5 did not pay ransom and thus was not provided with a decryptor which resulted in Victim 5 sustaining damages. *Id* at 6.

Based on the record in this case, the total value of the proceeds traceable to Count 1 is $324,123.26, which sum may be sought as a forfeiture money judgment pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion is **GRANTED**, and it is hereby **ORDERED** that:

1.      Pursuant to 18 U.S.C. § 981(a)(1)(C) and Rule 32.2 of the Federal Rules of Criminal Procedure, a forfeiture money judgment in the amount of $324,123.26 is hereby entered against the Defendant.

2.      The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

3.      Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

4.      The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend

6

this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

**DONE AND ORDERED** in Miami, Florida, this _____ day of April 2026.

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE